UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| LAWRENCE W. BECKHAM, ) | Case No. 10-49316-659 |
| ) | Judge Kathy A. Surratt-States |
| ) | Chapter 13 |
| Debtor. ) | |
| ) | |
| LAWRENCE W. BECKHAM, ) | **Adversary No. 10-4412-659** |
| ) | |
| ) | **PUBLISHED** |
| Plaintiff, ) | |
| ) | |
| -v- ) | |
| ) | |
| BRIAN BOND, and ) | |
| COLLECTOR OF REVENUE OF THE ) | |
| CITY OF ST. LOUIS, ) | |
| Defendants. ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The matter before the Court is Plaintiff Lawrence W. Beckham's Amended Complaint to Set Aside Tax Sale, Defendant Brian Bond's Answer to Plaintiff's Amended Complaint to Set Aside Tax Sale, Defendant/Counterclaim Plaintiff Brian Bond's Counterclaim and Motion to Confirm Sheriff's Sale and Answer to Counterclaim of Brian Bond. The pertinent facts are set forth below.

## FINDINGS OF FACT

Plaintiff Lawrence W. Beckham (hereinafter "Plaintiff") purchased the real property located at 6617 Idaho Avenue, St. Louis, Missouri (hereinafter "Property") in 2005 for $32,000.00. Plaintiff's Proposed Finding of Facts and Conclusions of Law (hereinafter "Pl.'s Facts") ¶ 1. The first page of the Special Warranty Deed (hereinafter "Deed") for the Property, made and entered into on November 16, 2005 between Plaintiff and Wells Fargo Bank, lists Plaintiff as "Lawrence Beckman" and Plaintiff's mailing address as 1424 South 18th Street, St. Louis, Missouri. Joint Ex. 1. The Grantee Rider is located on the fourth page of the Deed. The Grantee Rider lists Plaintiff as "Lawrence Beckham," identifies Plaintiff as grantee on the Property and lists the Property's address.

Joint Ex. 1.

Plaintiff did not pay real estate taxes on the Property from 2006 through 2009, and a delinquent tax lien arose. Joint Stipulation of Facts (hereinafter "Stip. Facts") ¶ 1. The Collector of Revenue for the City of St. Louis, Missouri (hereinafter "Collector of Revenue") filed suit to foreclose on the Property. Stip. Facts ¶¶ 2-3. Collector of Revenue filed the Affidavit of Service of Notice on June 1, 2010, published notice of the sale within thirty days of filing and served notice within thirty days of filing upon "Lawrence Beckman" at the South 18th Street address listed on the first page of the Deed. Stip. Facts ¶¶ 4-6; Joint Ex. 2. This name and address was contained in the City of St. Louis property assessor records for tax year 2009. Joint Ex. 5. No notice was served upon "Lawrence Beckham" or the Property. Joint Ex. 2.

On June 22, 2010, Collector of Revenue, through the sheriff, sold the Property at a tax sale (hereinafter "Tax Sale"). Defendant Brian Bond (hereinafter "Defendant") was the highest and best bidder at the Tax Sale, paying $5,000.00. Joint Ex. 7. Plaintiff did not cure the tax arrearage on the Property prior to the sale. Stip. Facts ¶ 10. On July 20, 2010, Defendant filed a Motion to Confirm his purchase of the Property. Stip. Facts ¶ 11.

On August 17, 2010, Plaintiff filed a petition under Chapter 13 of the Bankruptcy Code. Stip. Facts ¶ 12. Defendant's tax sale purchase was not yet confirmed at the time of Plaintiff's bankruptcy filing. Pl.'s Facts ¶ 7. On October 4, 2010, Plaintiff changed the mailing address for the Property listed in the St. Louis property assessor records from the South 18th Street address to the actual address, 6617 Idaho Avenue. Joint Ex. 6.

Plaintiff contends that he did not have actual or constructive notice of the Tax Sale, did not have any knowledge of the tax delinquency and that he only became aware of the Tax Sale when he received notice of the Tax Sale confirmation hearing, which was mailed to the Property. The Tax Sale confirmation hearing had not been held prior to Plaintiff's bankruptcy filing. Plaintiff claims that the Chapter 13 plan, confirmed on November 5, 2010, provides adequate protection to Defendant

2

by scheduling to fully cure the tax arrearage with interest and to compensate Defendant for the purchase price paid at the Tax Sale. Plaintiff also alleges that Collector of Revenue is the "real party in interest" regarding Plaintiff's Complaint to Set Aside Tax Sale and that Collector of Revenue has not filed an answer.

Defendant argues that the Tax Sale satisfied all due process requirements under Missouri's Municipal Land Reutilization Law (hereinafter "MLRL"). Defendant asserts that as a result, the sale was proper pursuant to Missouri Revised Statute Sections 92.750.2 and 92.825.2 and that the Tax Sale extinguished Plaintiff's rights in the Property. Defendant asserts that Plaintiff's only remaining interest in the Property is an entitlement to any surplus sale proceeds after outstanding lien amounts are satisfied.

Beyond the mechanics and adequacy of the Tax Sale notice, the parties also disagree about the value of the Property. Plaintiff, supported by the appraisal of witness Eric W. Vaughan, asserts that the Property's value is $17,000.00, and thus, Plaintiff argues that the amount paid by Defendant at the Tax Sale is inadequate. Pl.'s Br. 8; Joint Ex. 11. In arriving at this valuation, Vaughan, who assesses five houses a week, testified that he sought the fair-market value of the Property by comparing it to the asking price of comparable properties on the same street. Joint Ex. 11. Vaughn testified that he did not compare the Property to comparable forced-sale values. Defendant, supported by the appraisal of witness Steven A. Goldman, asserts that the Property's value is $4,000.00, and thus argues that the amount paid by Defendant at the Tax Sale is due consideration. Def.'s Brief 4; Joint Ex. 9. In arriving at his valuation, Goldman, who assesses 500 houses a year, testified that he sought a value informed by "physical analysis of the site," an analysis of the neighborhood and market analysis of other forced-sale properties. Joint Ex. 9. Further, Goldman testified that in forced-sale circumstances, property value is necessarily impacted by the absence of a willing seller, no open market, short notice and minimal marketing.

3

**JURISDICTION**

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 151, 157, and 1334 (2010) and Local Rule 81-9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N) (2010). Venue is proper in this District under 28 U.S.C. § 1409(a) (2010).

**CONCLUSIONS OF LAW**

The Court must decide whether the Tax Sale was proper when the titleholder's right to cure expired during the tax sale process, and whether the price paid for the property is due consideration. The Court considers each issue in turn.

*I. Propriety of the Sale*

Plaintiff argues that the Tax Sale, irrespective of confirmation, was void due to the inadequacy of notice. Regretfully, this argument is without basis in the applicable law. Plaintiff contends that the Tax Sale violated his constitutional rights because Collector of Revenue served notice on "Lawrence Beckman" and mailed the notice to 1424 South 18th Street, St. Louis, Missouri, as listed on Page 1 of the Deed, despite the accurate listing of Plaintiff's name and actual address on the Deed's Grantee Rider, located on Page 4 of the Deed.

The Missouri Constitution provides that "[n]o real property shall be sold for…city taxes without judicial proceedings, unless the notice of the sale shall contain the names of all record owners thereof…." Mo. Const. Art. 10, § 13. To demonstrate that this is a threshold matter, Plaintiff draws upon *Mitchell v. Atherton*, 563 S.W.2d 13 (Mo. 1978), which explains that notice "must contain the names of all record owners or the name of all owners appearing on the land tax book." *Id.* at 15. And in urging the Court to consider what Plaintiff purports to be a denial of due process—notice served on the wrong name at an incorrect address—Plaintiff cites *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S. Ct. 2706, 77 L.Ed. 2d 180 (1983) and *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S. Ct. 652, 94 L.Ed. 865 (1950).

4

Plaintiff's argument is reasonable for a number of reasons. First, if a deed contains two names that appear to identify the same person, the recorder should exercise adequate circumspection and ameliorate the discrepancy. Second, common sense dictates that notice of a foreclosure should be served upon the subject property.

Common sense also dictates that Plaintiff, himself, might have obviated this notice problem: Plaintiff signed the Deed. Plaintiff could have reviewed the document more closely and identified its internal inconsistencies before affixing his signature. Plaintiff did not. Moreover, Plaintiff claims to have never received notice about property taxes, but common sense compels most people to anticipate paying annual property taxes.

Ultimately, the MLRL requires only that notice be "mailed…to the person[] named in the petition as being the owner[]" of the foreclosure property, and that notice "shall be sent to the address[] of such person[] upon the records of the assessor." Mo. Rev. Stat. § 92.760.1 (2010). The Tax Sale was executed pursuant to these MLRL requirements, and as a result, it is valid and proper.

Additionally, the Missouri Supreme Court rejected a constitutional argument analogous to Plaintiff's thirty years ago, and that decision remains good law. In *Collector of Revenue v. Parcels of Land Encumbered with Delinquent Tax Liens (Parcels 24-069 and 24-070)*, 585 S.W.2d 486 (Mo. 1979) (hereinafter "*Parcels 24-069*"), a titleholder whose rights were extinguished by a foreclosure sale appealed, claiming that the notice requirements of the MLRL were unconstitutional and that the foreclosure sale was void. *Id.* at 487. Appellant argued that by not requiring personal service of process, the MLRL deprived him of his due process rights under the Fourteenth Amendment of the United States Constitution and under Article 1, Section 10 of the Missouri Constitution. *Id.* Appellant relied on *Mullane* to argue that the notice required by the MLRL was inadequate, however, as the Missouri Supreme Court observed, *Mullane* instructed that "'[where] the names of post office addresses of those affected by a proceeding are at hand, the reasons disappear for

5

resort to means less likely than the mails to apprise them of its pendency.'" *Parcels 24-069*, 585 S.W.2d at 487 (quoting *Mullane*, 339 U.S. at 318, 70 S. Ct. at 659, 77 L. Ed. at 875). *Mullane* did not, however, require personal service of process, *Parcels 24-069*, 585 S.W.2d at 487, nor does *Mullane* require more than what the MLRL prescribes. *Id.* at 488. Plaintiff claims that *Mullane* echoes in *Mennonite Board* and *Tulsa Collection Services v. Pope*, 485 U.S. 478, 108 S. Ct. 1340, 99 L.Ed. 2d 565 (1988), which mandates "reasonably calculated" notice. The Missouri Supreme Court has already explained that the MLRL "is reasonably calculated to reach tax delinquent property owners…." *Parcels 24-069*, 585 S.W.2d at 488.

The Missouri Supreme Court has upheld the MLRL as constitutional,[1] and the Tax Sale at issue was executed in accordance with the statutory requirements of the MLRL. For these reasons, this Court finds that the Tax Sale was proper. The MLRL fails to require that notice be served on the subject property, which may seem to be a counterintuitive allowance and procedure that invites the kind of unfortunate confusion at issue before the Court.

## II. Expiration of Titleholder's Right to Cure

Section 1322(c)(1) of the Bankruptcy Code provides that a Chapter 13 debtor may use his plan to cure a default that gave rise to a lien on his primary residence "until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law…." 11 U.S.C. § 1322(c)(1) (2010). This Code language shifts the focus to the governing state law, here the MLRL. The MLRL provides that a person holding title to a property may fully cure any arrearage—including interest and fees—in order to retain title "at any time prior to the time of the foreclosure sale." Mo. Rev. Stat. § 92.750.1 (2010). "In the event of failure to redeem prior to the time of the foreclosure sale" the titleholder "shall be barred and forever foreclosed of all his right, title and interest in and to the…real estate." Mo. Rev. Stat. § 92.750.2 (2010).

---

[1] In a case decided after this case was argued, the Missouri Supreme Court reaffirmed that the MLRL's notice provisions are constitutional. *See Collector of Revenue v. Bhatti (In re Matter of Foreclosures of Liens for Delinquent Land Taxes),* No. SC90732 (Mo. Mar. 1, 2011).

6

Plaintiff contends that the MLRL sections which allow a titleholder to cure a default until the foreclosure sale must be read in conjunction with the statute that requires any interested party to confirm all foreclosure sales: "[a]fter the sheriff sells any parcel of real estate, the court shall, upon its own motion or upon motion of any interested party, set the cause down for hearing to confirm the foreclosure sale of the real estate...." Mo. Rev. Stat. § 92.840.1 (2010). At a confirmation hearing, the court is to consider "evidence of the value of the property" and then determine "whether an adequate consideration has been paid" for the parcel subject to confirmation. Mo. Rev. Stat. § 92.840.2 (2010). If consideration is deemed inadequate, the bidder may increase his bid. *Id.* If the bidder declines, then the sale is disapproved, the underlying lien is continued and the property is offered at a subsequent sheriff's sale. *Id.*

Plaintiff believes that the contingent nature of the foreclosure embodied by the confirmation process means that the encumbered Property has not been "sold" until after the confirmation hearing is completed. Plaintiff argues that MLRL Section 92.840 provides that he may cure his delinquency up until confirmation and that his Chapter 13 plan satisfies this statutory requirement. Plaintiff relies on *In re Spencer*, 263 B.R. 227 (Bankr. N.D. Il. 2001), *In re Faulkner*, 240 B.R. 67 (Bankr. W.D. Okla. 1999) and *In re Tomlin*, 228 B.R. 916 (Bankr. E.D. Ark. 1999). *Tomlin* is no longer good law, having been superseded by an Arkansas statutory provision which makes a sale effective upon the auction date. *See, e.g., In re Cook*, 253 B.R. 249, 252 (Bankr. E.D. Ark. 2000).

*Spencer* and *Faulkner* are more persuasive because they each explain that Section 1322 is meant to enforce the intent of state law and that Section 1322 is sufficiently lenient to accommodate the supposition that a foreclosure sale may not be final until it is confirmed under the respective laws of those states. In both Illinois and Oklahoma, there is considerable jurisprudence examining how the applicable foreclosure statutes are to be construed in conjunction with Section 1322. In each state, the foreclosure sale confirmation hearing may, in fact, be the time at which a titleholder's rights in property are extinguished. *See Spencer*, 263 B.R. at 231 ("...Illinois courts

7

have repeatedly enounced that a foreclosure sale is not complete until an order confirming the sale has been entered"); *Faulkner*, 240 B.R. at 69 ("It appears obvious that a foreclosure sale can not [*sic*] be found to have been 'conducted in accordance with applicable nonbankruptcy law' until it is established that all steps required by that law in order to complete and validate the sale have been taken") (internal citation omitted).

While Illinois and Oklahoma law yield the equitable results of *Spencer* and *Faulkner*, the MLRL does not afford a similar result in this case.  Both federal and state courts in Missouri have held that under the MLRL, a titleholder's rights in property are extinguished contemporaneously with the sheriff's sale. *See Brown v. J.C. Penney Cas. Co.*, 649 F. Supp. 22, 23 (E.D. Mo. 1986) (tax lien sale executed pursuant to the MLRL conveyed the entire interest in property on the date of the sheriff's sale); *Collector of Revenue v. Parcel 42-370*, 672 S.W.2d 730, 731 (Mo. App. 1984) (hereinafter "*Omarco*") (former owner of property sold through tax lien foreclosure under the MLRL loses interest in property at time of sale but retains interest in proceeds).  Further, though a titleholder's rights in a property are extinguished when the sheriff executes the sale, the former owner may remain a party at the foreclosure confirmation hearing because he retains an interest in the sale proceeds, alone. *Omarco*, 672 S.W.2d at 731; *Collector of Revenue v. Parcels of Land Encumbered by Delinquent Tax Liens, Land Tax Suit 128-161*, 226 S.W.3d 250, 255 (Mo. App. 2007) (losing an interest in land under the MLRL does not equate to losing an interest in surplus proceeds).  This specific legacy interest does not resuscitate other rights; "[t]he two are not the same." *Omarco*, 672 S.W.2d *at 731*.  Plaintiff's right to cure the delinquency owed on the Property was extinguished on June 22, 2010 at the sheriff's sale.

### III.  *Value of the Property*

The final issue is whether adequate consideration has been paid for the Property.  The

MLRL leaves "adequate consideration" undefined,[2] and there is no bright-line rule for weighing the relative merits of competing appraisals. The most direct guidance comes from *Omarco*:

> The Missouri Supreme Court has held that adequate consideration is "such an amount as the court is satisfied is substantial, and fairly and reasonably commensurate with the value of the land in the circumstances of a forced-tax sale in a proceeding wherein, the sale having been confirmed, the purchaser procures a marketable title."

*Omarco*, 672 S.W.2d at 731 (quoting *Brasker v. Cirese*, 269 S.W.2d 62, 67 (Mo. 1954) (construing the Land Tax Collection Law, Missouri Statute Section 141.580)). "[F]air market value is not the standard for determining adequacy of consideration because it does not reflect the circumstances of a forced sale." *Id.*

While the *Omarco* court was considering Missouri Statute Section 141.580, this Court finds the *Omarco* standard instructive and will apply that standard in the instant matter.[3] Thus, the Court will determine if the consideration paid for the Property was adequate given "the value of the land in the circumstances of a forced-tax sale." *Id.*

Looking beyond MLRL jurisprudence, the Court finds *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S. Ct. 1757, 128 L.Ed. 2d 556 (1994), instructive. In *BFP,* a bankruptcy case, the Supreme Court made a stark distinction between market value and forced-sale market value. "…[M]arket value, as it is commonly understood, has no applicability in the forced-sale context; indeed, it is the very *antithesis* of forced-sale value…In short, 'fair market value' presumes market conditions that, by definition, simply do not obtain in the context of a forced sale." *BFP*, 511 U.S. at 537-538, 114 S. Ct. at 1761, 128 L.Ed. 2d at 564 (emphasis in original)(citations omitted).

---

[2] The following cases are tangentially related to the question of adequate consideration at an MLRL confirmation but are not instructive: *Collector of Revenue v. Parcels of Land Encumbered with Delinquent Tax Liens Serial Numbers 1-047 and 1-048*, 517 S.W.2d 49 (Mo. 1974); *Collector of Revenue v. Parcels of Land*, 681 S.W.2d 10 (Mo. App. 1984); *Garzee v. Sauro*, 623 S.W.2d 579 (Mo. App. 1981); *Collector of Revenue v. Parcels of Land Encumbered with Delinquent Tax Liens, Land Tax Suit 31*, 616 S.W.2d 865 (Mo. App. 1981).

[3] Missouri Statute Section 141.580 governs general taxation while the MLRL prescribes specific taxation procedures for St. Louis and Kansas City. The two are substantially similar and overlap.

9

"[P]roperty that *must* be sold within [the strictures of a forced-sale] is simply *worth less*. No one would pay as much to own such property as he would pay to own real estate that could be sold at leisure and pursuant to normal marketing techniques." *BFP*, 511 U.S. at 539, 114 S. Ct. at 1762, 128 L.Ed. 2d at 565 (emphasis in original).

The Supreme Court's strong guidance regarding forced-sale value enhances Goldman's—Defendant's appraisal witness—testimony. While both witnesses adduced credentials and appraisals that satisfy the Court, Goldman's focus on analogous forced-sale values is dispositive. As Goldman testified, a forced sale arises under impaired conditions: no willing seller, no open market, short notice and functionally no marketing. These criteria mirror the factors that informed the *BFP* holding, and they are persuasive in this case. "[A] fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." *BFP*, 511 U.S. at 545, 114 S. Ct. at 1765, 128 L. Ed. 2d at 569 (emphasis in original). Adequate consideration was paid by Defendant for the Property. A separate order consistent with the findings and conclusions will be entered.

                                                   */s/ Kathy A. Surratt-States*
                                                  KATHY A. SURRATT-STATES
                                                  United States Bankruptcy Judge

DATED: April 14, 2011
St. Louis, Missouri

Copies to:

Office of the United States Trustee
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Suite 6.353
St. Louis, MO  63102

Brian Bond
5843 Mango Drive
St. Louis, MO 63129

Collector of Revenue
Tyrone Taborn
625 N Euclid
St. Louis, MO 63108

Michael K Daming
Murphy Wasinger, L.C.
1401 S. Brentwood Blvd.
Ste. 550
St. Louis, MO 63144

Lawrence W Beckham
6617 Idaho Avenue
Saint Louis, MO 63111